UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRELL MORENO JONES, Booking #24736966,<br><br>                            Plaintiff,<br><br>v.<br><br>SAN DIEGO SHERIFF'S DEP'T,<br><br>                            Defendant. | Case No. 25-cv-00779-BAS-KSC<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS (ECF No. 2); AND**<br><br>**(2) DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)** |

**I.   INTRODUCTION**

Plaintiff Terrell Moreno Jones ("Plaintiff" or "Jones"), a detainee proceeding pro se, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983, along with a motion to proceed *in forma pauperis* ("IFP"). (*See* ECF Nos. 1, 2.) In his Complaint, Jones alleges his constitutional rights were violated while he has been detained in San Diego County jails. (ECF No. 1 at 3.) As discussed below, the Court grants Plaintiff's IFP motion and dismisses the Complaint without prejudice.

- 1 -

25cv0779

## II. MOTION TO PROCEED IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405.[1] *See* 28 U.S.C. § 1914(a). A party may initiate a civil action without prepaying the required filing fee if the Court grants leave to proceed IFP based on indigency. 28 U.S.C. § 1915(a); *Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).

To proceed IFP, plaintiffs must establish their inability to pay by filing an affidavit regarding their income and assets. *See Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015). Prisoners must also submit a "certified copy of the [prisoner's] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1), (4). Prisoners who proceed IFP must repay the entire fee in installments regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(2); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016).

In support of his IFP Motion, Jones has provided a copy of his prison certificate and trust account statement. (*See* ECF No. 2.) During the six months prior to filing suit, Jones had an average monthly balance of $41.37 and average monthly deposits of $124.83; and at the time he filed suit he had an available account balance of $25.18. (*Id*. at 6–7.) Accordingly, the Court **GRANTS** Plaintiff's IFP motion and assesses an initial partial filing fee of $24.96 pursuant to 28 U.S.C. § 1915(b)(1). This initial fee need be collected, however, only if sufficient funds are available in Plaintiff's account at the time this Order

---

[1] Civil litigants must pay an administrative fee of $55 in addition to the $350 filing fee. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The additional $55 administrative fee does not apply to persons granted leave to proceed IFP. *Id*.

is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). Pursuant to 28 U.S.C. § 1915(b), the agency having custody of Plaintiff will forward payments to the Clerk in installment provisions until the $350 statutory fee is paid in full.

### III.     SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)

#### A.     Legal Standards

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the Court must screen a prisoner's IFP complaint and *sua sponte* dismiss it to the extent that it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires that a complaint "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

To state a claim under § 1983, a plaintiff must plausibly allege "both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### B. Plaintiff's Allegations

Plaintiff alleges that on August 3, 2024, he was housed in the San Diego Central Jail ("SDCJ"). (ECF No. 1 at 3.) While Plaintiff's charged offense was non-violent, he was housed in a three-man cell with a "mentally ill inmate" and an inmate with a history of violence. (*Id.*) Plaintiff was afraid because he is frail and not "in a position to . . . defend [him]self." (*Id.*)

At some point, Plaintiff's cellmate with a history of violence "challenge[d]" him. (*Id.*) Jones tried to ignore him but when he got off his bunk, the inmate "struck" Jones twice in the head and face. (*Id.*) Jones wanted to push the "emergency button and call on staff" but he was afraid he would be labeled a snitch. (*Id.*) So instead, Plaintiff "tried defending [him]self by fighting." (*Id.*) Eventually, the inmate "stopped being aggressive." (*Id.* at 4.) Some days later, the same inmate hit Jones again. (*Id.*) Jones states he was again afraid to summon staff and therefore "had no choice but to fight back." (*Id.*)

On November 21, 2024, Jones had an anxiety attack and told his cellmate to press the emergency button. (*Id.* at 6.) But staff did not respond for "nearly a[n] hour." (*Id.*) By that time, Jones had a bloody nose and had begun vomiting. (*Id.*) It was another hour before Jones received medication for his anxiety attack. (*Id.*)

On December 8, 2024, Jones was strip searched. (*Id.* at 5.) Staff told Jones to "bend over while your legs are straight, open your cheeks and cough." (*Id.*) Per Jones, the search was more invasive than the strip search procedure performed when inmates are initially booked into the jail. (*Id.*) Jones also states he "believe[s] . . . a cellular device [was] used because [he] heard chirping sounds and laughs and giggles from staff." (*Id.*)

On February 5, 2025, Jones filed a civil action regarding conditions at the jail. (*Id.* at 8.) After receiving documents back from the lawsuit, Jones noticed someone at George Bailey Detention Facility ("GBDF")[2] had "edit[ed]" his paperwork. (*Id.* at 10.) On

---

[2] It appears Plaintiff was transferred to GBDF from SDCJ at some point after December 8, 2024. (*See* ECF No. 1 at 1.)

February 16, 2025, members of Plaintiff's family came to visit him in jail, but they were "harassed and discriminated against" and the visit never took place. (*Id.* at 8.) Jones was not told about his family's attempt to visit him and only found out later when he spoke to them on the phone. (*Id.*) Staff also prevented Plaintiff's relatives from "put[ting] money on [his] books." (*Id.*)

On February 26, 2025, Jones alleges staff harassed a black inmate. (*Id.* at 9.) Staff also left the "crossover door" open which put "both modules in total[] danger." (*Id.*) On February 28, 2025, GBDF staff conducted a surprise "raid" on Plaintiff's module. (*Id.* at 10.) Inmates, including Jones, were strip searched and forced to "spread [their] cheeks and cough 3 times" while staff "giggle[d]." (*Id.*)

On March 7, 2025, and March 8, 2025, no hot food was served for dinner. (*Id.* at 11.) Instead, inmates received peanut butter and jelly sandwiches. (*Id.*) On March 16, 2025, Plaintiff was subjected to another invasive strip search. (*Id.*) And on March 23, 2025, an inmate with a staph infection was allowed to serve soup to inmates in Plaintiff's module. (*Id.*)

### C.   Discussion

Jones alleges he was subjected to "cruel and unusual punishment" when he was housed with dangerous cellmates, denied adequate medical care, and strip searched. (*Id.* at 3–6.) He also alleges the overall conditions at SDCJ and GBDF are unsanitary, dangerous, and discriminatory. (*Id.* at 7–11.)

Plaintiff has named only the "San Diego Sheriff's Department" as a Defendant, and not the individual Sheriff's Department officers. (*Id.* at 2.) Departments of municipal entities are not "persons" subject to suit under § 1983; therefore, a local law enforcement department (like the San Diego County Sheriff's Department) is not a proper party. *See Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996) ("Naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality." (quoting *Stump v. Gates*, 777 F. Supp. 808, 816 (D. Colo. 1991), *aff'd*, 986 F.2d 1429 (10th Cir. 1993))); *Powell v. Cook Cnty. Jail*, 814 F. Supp.

757, 758 (N.D. Ill. 1993) ("Section 1983 imposes liability on any 'person' who violates someone's constitutional rights 'under color of law.' Cook County Jail is not a 'person.'").

The term "persons" under § 1983 encompasses state and local officials sued in their individual capacities, private individuals and entities which act under color of state law, as well as local governmental entities. *Vance*, 928 F. Supp. at 995–96. However, the Sheriff's Department, as a department or subdivision of the County of San Diego, is not a "person" subject to suit under § 1983. *See, e.g.*, *United States v. Kama*, 394 F.3d 1236, 1239 (9th Cir. 2005) ("[M]unicipal police departments and bureaus are generally not considered 'persons' within the meaning of [section] 1983."); *Rodriguez v. Cnty. of Contra Costa*, No. C 13-02516 SBA, 2013 WL 5946112 at *3 (N.D. Cal. Nov. 1, 2013) (citing *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995)) ("Although municipalities, such as cities and counties, are amenable to suit under *Monell* [*v. Dep't of Social Servs.*, 436 U.S. 658 (1978)], sub-departments or bureaus of municipalities, such as the police departments, are not generally considered "persons" within the meaning of § 1983."); *Nelson v. Cnty. of Sacramento*, 926 F. Supp. 2d 1159, 1170 (E.D. Cal. 2013) (dismissing Sacramento Sheriff's Department from section 1983 action "with prejudice" because it "is a subdivision of a local government entity," i.e., Sacramento County). Therefore, Plaintiff cannot pursue claims against the San Diego Sheriff's Department. *See Boone v. Deutsche Bank Nat'l Tr. Co.*, 2017 WL 117966, at *3 (E.D. Cal. 2017) ("Because the Solano County Sheriff's Department is not a 'person' within the meaning of Section 1983, plaintiffs cannot maintain their claims against it under that statute as a matter of law.").

Furthermore, to the extent Plaintiff intends to assert a claim against the County of San Diego itself, his allegations, as currently pleaded, are also insufficient to state a claim. A local governmental entity, like the County of San Diego, may not be held vicariously liable under section 1983 simply based on the allegedly unconstitutional acts of its employees. *See Board of Cnty. Comm'rs. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978) ("[A] a municipality cannot be held liable solely because it employs a tortfeasor."); *Jackson v. Barnes*, 749 F.3d 755, 762 (9th Cir.

2014). Instead, a municipal entity is liable under section 1983 only if the plaintiff alleges his constitutional injury was caused by employees acting pursuant to the municipality's policy or custom. *Monell*, 436 U.S. at 691; *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008). And here, Jones has failed to allege any facts to suggest "the [alleged] constitutional violations were carried out pursuant to County" policy, practice, custom or failure to train. *See AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (stating a *Monell* claim requires "more than a bare allegation that government officials' conduct conformed to some unidentified government policy or custom").

Thus, Jones has failed to state a claim against the San Diego Sheriff's Department or San Diego County and as such, the Complaint is dismissed. *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

### D. Leave to Amend

Given Plaintiff's pro se status, the Court grants him leave to amend his complaint. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

## IV. CONCLUSION AND ORDER

Accordingly, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2);

2. **DIRECTS** the Facility Commander at the George Bailey Detention Facility, or their designee, to collect from Plaintiff's trust account the $24.96 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2);

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on the Facility Commander, George Bailey Detention Facility, 446 Alta Rd. Ste. 5300, San Diego, California, 92158;

4. **DISMISSES** Plaintiff's Complaint in its entirety without prejudice for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b); and

5. **GRANTS** Plaintiff **sixty (60)** days leave from the date of this Order in which to file a First Amended Complaint which cures the deficiencies of pleading noted in this Order. Plaintiff's Amended Complaint must be complete by itself without reference to his original Complaint. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to timely file a First Amended Complaint, the Court will enter a final Order dismissing this civil action based both on failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), and failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

**DATED: August 5, 2025**

_Cynthia Bashant_
**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**